UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
05-CV-2123(JMR/FLN)

Brandon Lee Kruse            )
                             )
     v.                      )      ORDER
                             )
Officer Jackson et al.       )

Plaintiff was bitten by a police dog in the course of an arrest. He claims the dog's bite deprived him of his constitutional rights under color of state law, pursuant to 42 U.S.C. § 1983, and was a tortious act under Minnesota law. Defendants deny committing any wrongful act, and seek summary judgment. For the following reasons, defendants' motion is granted in part and denied in part.

I. Background[1]

Plaintiff and a friend helped Jennifer Maternowski move into an apartment. Their labors ended in the early morning hours of September 4, 2003. After completing the move, plaintiff invited Ms. Maternowski back to his home with him, but she declined.

Their discussions evolved into a physical interaction, which plaintiff characterizes as "horseplay." During their horseplay, plaintiff put his hand on Ms. Maternowski's shoulder. She swung

---

[1] The parties are largely consistent in their accounts of what happened, while differing in their interpretation and characterization of events. All disputed facts are construed in the light most favorable to plaintiff, the non-moving party. Coleman v. Parkman, 349 F.3d 534, 536 (8th Cir. 2003). The facts recited in this Opinion are based on the pleadings, and are not to be considered binding factual determinations.

her purse at him. As he leaned back to dodge the blow, he either kicked her, or, as described in his brief, reached out his right leg and tapped her on the buttocks with his toes, giving her a "little side kick." He then announced he was leaving, and jogged off toward his apartment.

Unbeknownst to plaintiff, these events were observed by Officer Bentley Jackson of the Burnsville Police Department. Officer Jackson, his canine partner Louie, and fellow officers were at the apartment complex in response to a burglary call. Upon seeing the incident, Officer Jackson concluded plaintiff had assaulted Ms. Maternowski and fled the scene. He and Louie followed plaintiff. Louie was trained in the bite-and-hold technique, meaning that he would find, bite, and hold a suspect upon Officer Jackson's command.

At this point, there is an irreconcilable conflict: Officer Jackson claims he shouted to plaintiff, "Police," and then, "Come to me." Plaintiff, who denies hearing Officer Jackson's command, continued running. Next, Officer Jackson claims he called out a warning to plaintiff saying he would release the dog if plaintiff did not stop running. Plaintiff's friend, who helped with the move and was on the scene when the incident occurred, denies hearing Officer Jackson give any warning. Plaintiff acknowledges hearing an unidentified voice shout, "Hey, hey, you can't do that," but could not clearly see who was shouting, and kept jogging toward his

apartment.

As he continued running, plaintiff recalls hearing the sound of jingling chains getting louder. He turned to see a large dog chasing him, but kept running. As he crossed the street, Louie leaped and bit his leg. Here again, there is a factual dispute concerning whether 30 to 45 seconds passed, according to Officer Jackson, or "minutes" passed, according to plaintiff. During this time period, Louie bit plaintiff's leg from knee to ankle, causing plaintiff to scream in pain.

Officer Jackson approached plaintiff and told him to put his hands on his head. Plaintiff did not immediately comply, but told the Officer to remove the dog. Officer Jackson did not give Louie the release command until he had plaintiff handcuffed. Immediately after his apprehension and arrest, plaintiff was transported to a hospital for treatment of his injuries.

Plaintiff was ultimately cited for misdemeanor obstruction of the legal process. The charge was resolved when plaintiff entered an <u>Alford</u> plea, during which he did not concede any of the underlying facts. Plaintiff, thereafter, filed this case in Dakota County District Court against named and unnamed Burnsville police officers,[2] as well as the City of Burnsville, Minnesota.

Defendants timely removed the case to this Court. Plaintiff

---

[2] At oral argument on October 31, 2006, plaintiff, through counsel, agreed to dismiss his complaint against Officers Stenger, Bisek, Archambault, and unnamed deputies.

claims violations of his constitutional rights under 42 U.S.C. § 1983, as well as state law claims of assault, battery, intentional and negligent infliction of emotional distress, negligence, and strict liability under Minnesota's dog bite statute, Minn. Stat. § 347.22 (2002). This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

II. Analysis

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246 (1986). The party opposing summary judgment may not rest upon the allegations in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. See Anderson, 477 U.S. at 248-49; see also Hartnagel v. Norman, 953 F.2d 394, 395-96 (8th Cir. 1992). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis omitted). If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. See Celotex, 477 U.S. at 322.

A.   <u>Section 1983:  Qualified Immunity</u>

Officer Jackson claims he is entitled to qualified immunity. Government officials are generally entitled to qualified immunity from § 1983 liability when performing discretionary functions, unless they violate clearly established law. <u>Beck v. Wilson</u>, 377 F.3d 884, 889 (8th Cir. 2004), citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  The existence of qualified immunity is a question of law for the court.  <u>Hunter v. Bryant</u>, 502 U.S. 224, 228 (1991).

When faced with a claim of qualified immunity, a court must perform two inquiries in proper sequence. <u>Coleman v. Parkman</u>, 349 F.3d 534, 537-38 (8th Cir. 2003), citing <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001).  The court first considers whether the alleged facts, viewed most favorably to plaintiff, show the official's conduct violated a constitutional right.[3]  <u>Coleman</u>, 349 F.3d at 538.  If so, the court will then consider whether the right was "clearly established."

The second question focuses on the particular case's specific context, rather than on a broad general proposition.  The court must consider "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Id.</u>

Plaintiff claims Officer Jackson used excessive force in his

---

[3]Here, plaintiff's complaint alleges defendants violated his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights.  In his response to defendants' motion, plaintiff has abandoned all but the Fourth Amendment claims relating to excessive force.

5

arrest. Accordingly, the Court applies the Fourth Amendment's "objective reasonableness" standard. <u>Kuha v. City of Minnetonka</u>, 365 F.3d 590, 597 (8th Cir. 2003), citing <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989).[4] This standard requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Kuha</u>, <u>id.</u> Officer Jackson's use of force is judged from the perspective of a "reasonable officer on the scene," bearing in mind that officers' decisions often occur in "tense, uncertain or rapidly-evolving" circumstances. <u>Id.</u> Here, to survive summary judgment, plaintiff must present sufficient evidence to allow a jury to find that Officer Jackson's use of force was not objectively reasonable.

Plaintiff offers three instances of excessive force: first, releasing a "bite-and-hold" trained dog in response to a minor offense; second, releasing the dog without a prior warning; and

---

[4] Plaintiff suggests the use of the police dog is equivalent to the use of deadly force. The Eighth Circuit Court of Appeals has squarely rejected this argument. In <u>Kuha</u>, the Court found "the likelihood of death from the use of a properly trained police dog to apprehend a suspect sufficiently remote as to preclude its characterization as deadly force." 365 F.3d at 598. Accordingly, this case is governed by <u>Graham v. Connor</u>'s general objective reasonableness standard, rather than the more specialized deadly force standard of <u>Tennessee v. Garner</u>, 471 U.S. 1 (1985). <u>Kuha</u>, <u>id.</u>

6

third, refusing to call off the dog before plaintiff was handcuffed. The Court finds the first and third instances involve no constitutional violation; in each, the officer is entitled to qualified immunity. Plaintiff's second assertion is problematic, however. On this claim, the Court finds plaintiff has made a prima facie case of a Fourth Amendment violation precluding summary judgment.

The Eighth Circuit addressed each of plaintiff's three concerns in Kuha v. City of Minnetonka. There, officers deployed a bite-and-hold trained dog in an effort to locate a suspect who fled on foot from a routine traffic stop during the early morning hours. The suspect hid in tall swamp grass. During the search, the dog alerted and lunged ahead on its lead. The officers followed. Moments later, they found the dog biting and holding the suspect's upper thigh, while the suspect was gripping the dog's head in his hands. The officers would not call off the dog until they had an opportunity to search the area and the suspect put his hands in the air. During this approximately fifteen-second period, the dog continued its bite and hold, causing the suspect to sustain serious injury. Kuha, 365 F.3d at 595-96.

On appeal, the Eighth Circuit found the use of a bite-and-hold trained dog to apprehend a possible misdemeanant was not a per se Fourth Amendment violation. Kuha, id. at 600. The Eighth Circuit recognized the importance of police dogs, and held that their use

is not inherently dangerous.  Id.  Turning to the specific facts of the case, the Court concluded that, "given the odd turn of events initiated by Kuha, the initial decision to use [the dog] to assist in Kuha's apprehension was objectively reasonable as a matter of law."  Id.

The Eighth Circuit also found there was no excessive force during the moments after apprehension, when the officers refused to call off the dog until securing the area, and until the suspect put his hands in the air.  Again, weighing the totality of the circumstances, the Court found, "in light of the short time frame at issue and the conditions under which Kuha fled and was found," the officers' refusal to call off the dog was not objectively unreasonable.  Id. at 601.

The Court reached a contrary conclusion on Kuha's claim that the officer failed to give a warning prior to releasing the dog. The Eighth Circuit found "a jury could properly find it objectively unreasonable to use a police dog trained in the bite and hold method without first giving the suspect a warning and opportunity for peaceful surrender."  Id. at 598.  In that case, the court saw "no reason why . . . a rational jury would be precluded from finding that the officers could have placed themselves out of harm's way . . . and given a loud verbal warning that a police dog was present and trained to seize by force."  Id. at 599. Accordingly, failure to give a prior warning could violate a

8

suspect's Fourth Amendment rights. Id. at 598.

Kuha controls this Court's inquiry. Officer Jackson's decision to release the dog, and to refrain from calling him off until plaintiff was handcuffed, are reasonable here, as they were in Kuha. But if he failed to give a warning before releasing the dog, a jury could find that conduct unreasonable. Kuha, id.

On the facts in this case, Officer Jackson witnessed physical contact between plaintiff and Ms. Maternowski consistent with an assault, a situation potentially more serious than in Kuha (failure to dim headlights for oncoming traffic). Like the suspect in Kuha, plaintiff fled the scene. Rather than hiding, he ran across the apartment complex, and away from his companions. It was early in the morning. Officer Jackson knew neither where plaintiff was headed, nor whether he was armed. Although other officers were at the complex, none were able to apprehend plaintiff or to question his companions. The Court finds no constitutional flaw in Officer Jackson's decision to use Louie to assist in apprehending plaintiff.

The same holds true for Officer Jackson's refusal to call Louie off once plaintiff was down. Louie's "hold" lasted longer than Kuha's - at least 30 to 45 seconds according to Officer Jackson, and possibly "minutes" according to plaintiff. Yet, as in Kuha, "this is not a case where the officers are accused of siccing a police dog on a manifestly unarmed and compliant suspect." Kuha,

9

id. at 601.  Plaintiff tried to outrun the dog.  Louie took him down some 150 to 200 feet away from Officer Jackson.  Officer Jackson, who by now had called for assistance which had yet to arrive, followed at a run and found plaintiff in a "pushup" position.  Plaintiff heard Officer Jackson tell him to put his hands on his head, but plaintiff did not comply, because, as he described it, "I told him to get the dog off me, and I didn't want to put my face down in the concrete."  By plaintiff's own admission, Officer Jackson had to handcuff him "by force," by grabbing each hand and pulling it behind his back.  When both hands were cuffed, Officer Jackson commanded Louie to release his hold.  At about this time, the first of the other officers arrived on the scene.

The Court finds that no jury could find Officer Jackson's conduct objectively unreasonable in requiring plaintiff to be handcuffed prior to releasing Louie.  Plaintiff did not comply with the Officer's instructions, and gave no indication that he would do so.  Accordingly, until Officer Jackson had control of both of plaintiff's hands, he could not be certain plaintiff was compliant and unarmed.  The Officer's actions were not, as a matter of law, objectively unreasonable, nor do they present a Fourth Amendment violation.

If there was no warning, however, there is a constitutional question.  And there is a clear factual issue on this point:

plaintiff and his witness deny hearing a warning; Officer Jackson claims he gave one. Therefore, plaintiff has shown a genuine issue of fact as to whether Officer Jackson gave the warning required by the Eighth Circuit in <u>Kuha</u> - a "loud verbal warning that a police dog was present and trained to seize by force." <u>Kuha</u>, 364 F.3d at 599. In the absence thereof, the Eighth Circuit finds the deployment of a bite-and-hold dog to be objectively unreasonable. <u>Id.</u>

Even assuming the dog was released without a warning, the Court must next determine whether the right was clearly established. <u>Saucier</u>, 533 U.S. at 201. The Court asks, then, whether it would be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Id.</u> at 201-02.

A right may be clearly established, even if the Supreme Court has not directly addressed the issue, and even if the precise act or omission has not previously been held unlawful. <u>Norfleet v. Arkansas Dept. of Human Servs.</u>, 989 F.2d 289, 291 (8th Cir 1993); <u>Craighead v. Lee</u>, 399 F.3d 954, 962 (8th Cir. 2005). The question is whether plaintiff's right to receive a warning prior to the release of the dog was "either expressly established by, or clearly implicit in, existing case law." <u>Id.</u>

In <u>Kuha</u>, the Eighth Circuit clearly explicated the right to a

warning prior to release of a bite-and-hold trained animal.[5]  But the Eighth Circuit's release of two opinions in Kuha puts the rule into an unusual procedural posture here.  The Eighth Circuit's first Kuha Opinion was issued May 8, 2003, nearly four months prior to plaintiff's arrest.  That Opinion held that a failure to warn prior to release of a police dog violated the Fourth Amendment.  Kuha, 328 F.3d 427, 435 (8th Cir. 2003) (superseded by 365 F.3d 590).  Rehearing was sought, though the original opinion was never vacated.  The Eighth Circuit then issued an amended and superseding Opinion on April 27, 2004.  The amended Opinion, cited throughout this Order, maintains the earlier Opinion's holding that a failure to warn violates the Constitution.  Kuha, 365 F.3d at 598.

With this history in mind, the Court concludes that, as of September 4, 2003, it would have been clear to a reasonable officer that the release of a bite-and-hold trained canine without a prior warning to the suspect would violate the suspect's constitutional rights.  Given that the May, 2003, Kuha Opinion was never vacated, the Court finds the question of whether a warning was legally required had been resolved in the Eighth Circuit when plaintiff was apprehended.

Plaintiff's account of events surrounding arrest, if believed

---

[5]Until Kuha, the right to a warning prior to release of a police dog had not been established in the Eighth Circuit.  As the appellate court stated, "[t]here are no cases from this circuit that mandate such a warning and a review of other circuits offers little guidance on the issue." Kuha, 365 F.3d at 602.

12

by a jury, shows a constitutional violation. After Kuha, those rights were clearly established. Accordingly, Officer Jackson cannot be afforded qualified immunity on this claim.

B.  Section 1983:  Monell Claim

A municipality may be liable under Section 1983 "where an official custom causes an individual to suffer a constitutional harm." Thelma D. v. Bd. of Educ., 934 F.2d 929, 932 (8th Cir. 1991), citing Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91 (1978). A § 1983 plaintiff must first identify the governmental policy in question. Once the policy is identified, the court and jury may determine whether it is unconstitutional. See Dick v. Watonwan County, 738 F.2d 939, 943 (8th Cir. 1984). In order to establish liability, this official policy or custom must be the "moving force of the constitutional violation." Monell, 436 U.S. at 694. The policy or custom must be proven, because a municipality cannot be held liable solely on a respondeat superior theory. Id. at 691.

As an initial matter, absent a constitutional injury, there can be no Monell claim. So, the Court's prior holding, finding no constitutional defect in Officer Jackson's decisions to release the dog on plaintiff, or call the dog off until plaintiff had been handcuffed, precludes any Monell claim on these issues. The only possible Monell claim arises from the failure to warn.

Thus, the Court must construe the City of Burnsville's written

13

Use of Force Policy - the only policy identified by plaintiff - as the moving force behind Officer Jackson's failure to give a warning. Burnsville's Use of Force Policy has two sections relevant to this question: a use-of-force continuum, and special procedures for use of canines. The use-of-force continuum discusses three types of force: deadly force, such as the intentional discharge of a firearm toward another person; "less lethal force," using "extended range kinetic energy impact devices"; and non-deadly force, meaning any other use of force. Canines are not mentioned in Burnsville's use-of-force policy. Officers may use non-deadly force "to protect themselves or another from physical harm," to "restrain or subdue a resistant individual," or to "bring an unlawful situation under control." The policy generally does not require a warning before use of non-deadly force. The sole exception is that, "if practical," an officer shall give a warning before use of a Taser.

Canine procedures are addressed separately. Burnsville's canine policy sets procedures for their use in building searches, tracking, aggression, and vehicle security; for when a canine handler is injured or when interacting with the canine unit; and for reporting dog bites. The policy does not state whether Burnsville's police dogs are trained exclusively in the bite-and-hold method, nor does it prescribe the use of warnings prior to using a canine in apprehending a suspect.

Although Burnsville's policy differs from Minnetonka's, <u>Kuha</u> controls. When a city employs dogs trained in the bite-and-hold method, a jury could find a prior verbal warning is required. A jury could also reasonably conclude that a policy which does not mandate a warning was the cause of a failure to warn. <u>Kuha</u>, 365 F.3d at 607. Plaintiff has presented a question of fact as to whether this policy was the moving force behind the claimed constitutional violation. <u>Id</u>. Therefore, summary judgment is inappropriate on the <u>Monell</u> claim.

    C.  <u>State Law Claims:  Official Immunity</u>

Defendants move for dismissal of plaintiff's claims of assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. Because defendants' motions are unopposed, Counts I through V of the complaint are dismissed.

This leaves plaintiff's strict liability claim under Minnesota's dog-bite statute. The Minnesota Supreme Court has recently held the statute applies to municipal owners of police dogs. <u>Hyatt v. Anoka Police Dep't</u>, 691 N.W.2d 824, 828 (Minn. 2005).

Defendants seek official immunity on this claim. In Minnesota, "a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a

15

willful or malicious wrong." Kuha, 365 F.3d at 607, citing Elwood v. County of Rice, 423 N.W.2d 671, 677 (Minn. 1988) (en banc) (internal quotations omitted). Official immunity protects public officials from the threat of litigation as they exercise discretion in their work. Kuha, id. at 607-08.

A police officer's use of a dog to apprehend a suspect is a discretionary function entitled to official immunity. See Kuha, id. at 608; Hyatt v. Anoka Police Dep't, 700 N.W.2d 502, 508 (Minn. Ct. App. 2005). This immunity can be lost if a police officer acts with malice. In the context of official immunity, "malice" means "intentionally committing an act that the official has reason to believe is legally prohibited." Hyatt, id., citing Kelly v. City of Minneapolis, 598 N.W.2d 657, 663 (Minn. 1999). Plaintiff has adduced absolutely no evidence to show that Officer Jackson personally knew of the Eighth Circuit's decision in Kuha, nor that he opted against warning plaintiff for the purpose of violating plaintiff's constitutional rights. Kuha had been issued fewer than four months prior to these events.

Yet on this record, the Court cannot afford Officer Jackson official immunity at this time. If plaintiff is unable to provide any more evidence of malice beyond the issuance of a Circuit Court opinion, it is extraordinarily unlikely that plaintiff's claim will survive a directed verdict motion at trial. However, the motion is presently denied. As Officer Jackson is not entitled to official

immunity on plaintiff's strict liability claim, it follows that the City of Burnsville is not entitled to vicarious official immunity at this time. Hyatt, 700 N.W.2d at 509.

III. Conclusion

For the foregoing reasons, defendants' motion for summary judgment is denied as to Officer Jackson's failure to give a prior warning, and as to the Monell claim associated with this potential violation.

In all other respects defendants' motion for summary judgment is granted.

IT IS SO ORDERED.

Dated: December 20, 2006

s/ JAMES M. ROSENBAUM<br>
JAMES M. ROSENBAUM<br>
United States Chief District Judge